IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DOLORES GRIFFITH,                     §
                                      §
                  Plaintiff,          §
                                      § Civil Action No. 3:04-CV-2059-D
VS.                                   §
                                      §
NOVATION, LLC,                        §
                                      §
                  Defendant.          §

MEMORANDUM OPINION
AND ORDER

Plaintiff Dolores Griffith ("Griffith") sues defendant Novation, LLC ("Novation"), asserting claims for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and misrepresentation.[1] Novation moves for summary judgment on Griffith's ADEA claim, presenting the question whether Griffith knowingly and voluntarily waived it by accepting a severance package that contained a written waiver. For the reasons that follow, the court holds that she did, and it grants Novation's motion. The court raises *sua sponte* that Novation is entitled to summary judgment dismissing Griffith's misrepresentation claim, and it gives her an opportunity to respond to dismissal of that claim.

---

[1]Griffith's complaint also includes a state-law claim for intentional infliction of emotional distress, which the court dismissed in a December 15, 2004 order, and a sex discrimination claim based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), which, as the court explains *infra* at § III, she has withdrawn in response to Novation's motion.

I

Novation hired Griffith in June 2000 as an Administrative Assistant II in its Legal Department.[2]  Prior to her employment with Novation, Griffith had no experience in the legal field.  She does not have a certification as a legal assistant or a paralegal, has never received any formal paralegal education, and does not have a law degree or any other degree beyond a high school diploma.[3]

Griffith's written job description included such duties as managing the attorneys' calendars; managing communications, including correspondence, mail, and conference calls; typing Board minutes and maintaining the Corporate Records book; maintaining the

_____

[2]The court recounts the evidence favorably to Griffith, as the summary judgment nonmovant, and draws all reasonable inferences in her favor. *See, e.g.*, *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000).

[3]In her response brief, Griffith asserts that she "has 54 hours of college courses and received on-the-job training in the Novation Legal Department as a paralegal." P. Br. 3.  Griffith does not cite any evidence, however, to support these allegations. The court is not required to "sift through the record" in search of a genuine issue of material fact. *See Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir. 1996).  Conclusory assertions, made without any citation to evidence, are insufficient to withstand summary judgment. *See, e.g.*, *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate . . . " (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc))).  Moreover, N.D. Tex. Civ. R. 56.5(c) provides that "[a] party whose . . . response is accompanied by an appendix must include in its brief citations to each page of the appendix that supports each assertion that the party makes concerning the summary judgment evidence."

Legal Department's contracts, confidentiality agreements, and trademark and litigation files and databases; copying contracts; fielding, coordinating, and documenting telephone calls; coordinating travel; and preparing expense reports. Griffith also reviewed supplier contracts to determine whether the fee set forth in each contract was greater or less than three percent.

In late 2003 and early 2004, Novation's Vice President for Compliance and Legal, Veronica Lewis ("Lewis"), decided to eliminate an Administrative Assistant position in the Legal Department and hire a Legal Representative. On February 2, 2004 Novation terminated the employment of Griffith, who was then age 62. The same day, Novation offered her a severance package, including severance pay, assistance with COBRA[4] premiums, and outplacement services. This package was conditioned on Griffith's executing a release and waiver of, *inter alia*, her claims under the ADEA and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). Two days later, and before she signed the waiver, Griffith noticed on an Internet job-posting website that Novation had announced an opening for the Legal Representative position, and she believed it to be a posting for her job. Nevertheless, after consulting with an attorney, Griffith signed the waiver on February 17, 2004 and accepted the severance

---

[4]Consolidated Omnibus Budget Reconciliation Act of 1986, 29 U.S.C. § 1161 *et seq*.

package.

For the Legal Representative position, Novation sought an individual with at least five years of paralegal/legal assistant experience. Novation hired Mike Hayslip ("Hayslip") for the job on May 1, 2004. Hayslip has both bachelors and Juris Doctor degrees, he had worked as a paralegal for several firms before joining Novation, and he had worked as a temporary employee in Novation's Legal Department from December 2003 through April 2004.

After Griffith's termination, Angela Metcalf ("Metcalf"), an Administrative Assistant in Novation's Finance Department, began performing many of the administrative duties in the Legal Department. Metcalf spent up to 75% of her time supporting the Legal Department, but she continued providing administrative support for the Finance Department, her position continued to be accounted for in the Finance Department's budget, and she continued reporting to Novation's Senior Finance Director.

II

A

Novation seeks summary judgment on Griffith's ADEA claim, contending, *inter alia*, that it is barred because Griffith signed a valid release waiving her right to bring an age discrimination claim.[5] Griffith maintains that the release does not preclude her

---

[5]Novation also moves for summary judgment on the merits of Griffith's age discrimination claim. The court need not reach this ground of the motion.

claim because Novation obtained it by means of a material misrepresentation of fact. Specifically, Griffith alleges that Novation misrepresented that Griffith's job was being eliminated, when in fact it was not.

Summary judgment is proper if, viewing the facts in the light most favorable to Griffith, there are no genuine issues of material fact and Novation is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact issue is genuine if the evidence would permit a reasonable jury to return a verdict in Griffith's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

B

The Older Workers Benefit Protection Act, 29 U.S.C. § 626(f) ("OWBPA"), governs waivers of ADEA claims. Congress adopted the OWBPA as an amendment to the ADEA "to ensure that workers did not carelessly waive a potential ADEA claim." *Chaplin v. Nationscredit Corp.*, 307 F.3d 368, 375 (5th Cir. 2002) (citing *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 426-27 (1998)). The OWBPA provides that an individual cannot waive an ADEA claim unless the waiver is knowing and voluntary. The OWBPA enumerates eight prerequisites that must be satisfied before a waiver of an ADEA claim can be considered knowing and voluntary. Novation has the burden of demonstrating that OWBPA's requirements were met, *see* § 626(f)(3), and the parties do not dispute that they were met in this case.

- 5 -

C

Novation first posits that, under the OWBPA, a waiver will be considered knowing and voluntary if it meets the statute's enumerated requirements. If this assertion were true, it would foreclose Griffith's argument regarding the alleged material misrepresentation. But this proposition overstates the impact of having met the OWBPA's requirements. The OWBPA merely provides that the prerequisites must be established "at a minimum" for a waiver to be considered knowing and voluntary. *See id.* § 626(f)(1). Meeting the OWBPA's requirements does not necessarily compel the conclusion that a waiver was made knowingly and voluntarily. *See Wastak v. Lehigh Valley Health Network*, 342 F.3d 281, 294 n.8 (3d Cir. 2003) (stating that the OWBPA was enacted to establish floor, rather than ceiling, for defining knowing and voluntary); *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1228 (10th Cir. 1999) ("[T]he statutory [requirements] are not exclusive and other circumstances, outside the express statutory requirements, may impact whether a waiver under the OWBPA is knowing and voluntary."); *Griffin v. Kraft Gen. Foods, Inc.*, 62 F.3d 368, 373–74 (11th Cir. 1995) (per curiam) ("[W]e hold that nonstatutory circumstances, such as fraud, duress, or coercion in connection with the execution of the waiver, may render an ADEA waiver not 'knowing and voluntary.'").

D

1

Novation next contends that, in order for Griffith to prevail in demonstrating that the waiver was not knowing and voluntary, she must establish that Novation's conduct amounted to common law fraud under Texas law. Novation recites the elements of fraud in Texas and posits that its conduct did not constitute fraud because (1) there was no misrepresentation and (2) there was no reliance on a misrepresentation, or, alternatively, any reliance was neither reasonable nor justifiable. Griffith does not respond to this assertion directly; she merely alleges that she was induced to sign the release based on a misrepresentation of fact that her job was being eliminated.

2

Prior to the OWBPA's enactment, the Fifth Circuit in *O'Hare v. Global Natural Resources, Inc.*, 898 F.2d 1015 (5th Cir. 1990), adopted a "totality of the circumstances" approach to determine whether a waiver of an ADEA claim is knowing and voluntary. *Id.* at 1017. The *O'Hare* panel adopted this test in the context of an employee's asserting the defense of duress to a release of an ADEA claim. *Id.* The panel rejected the employee's contention that the duress defense was governed by Texas law. *Id.* Instead, it "fashion[ed] a federal common law [rule]," reasoning that "the policies embedded in the federal statute should not be frustrated

by state law." *Id.* The court listed six factors to be used in determining whether a waiver is knowing and voluntary:

> (1) the plaintiff's education and business experience, (2) the amount of time the plaintiff had possession of or access to the agreement before signing it, (3) the role of plaintiff in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether the plaintiff was represented by or consulted with an attorney, and (6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Id.* (quoting *Bormann v. AT & T Commc'ns, Inc.*, 875 F.2d 399, 403 (2d Cir. 1989)).

The Fifth Circuit has not considered whether after the enactment of the OWBPA courts should continue to utilize the totality of the circumstances approach or look to state law to determine whether a waiver of an ADEA claim was knowing and voluntary.[6] But other circuits that had adopted the totality of the circumstances approach before enactment of the OWBPA have continued to use it afterward. *See, e.g.*, *Wastak*, 342 F.3d at 294 n.8; *Bennett*, 189 F.3d at 1228-29; *Griffin*, 62 F.3d at 373. And the Supreme Court has noted that "[t]he OWBPA sets up its own

---

[6]The fact that the Fifth Circuit has continued to use the totality of the circumstances approach to waivers of other discrimination claims, *see, e.g.*, *Smith v. Amedisys Inc.*, 298 F.3d 434, 441 (5th Cir. 2002) (waiver of Title VII claim), is not necessarily dispositive on this question. The statutes that underlie these claims do not have provisions similar to the OWBPA that establish minimum requirements for a knowing and voluntary waiver.

regime for assessing the effect of ADEA waivers, separate and apart
from contract law." *Oubre*, 522 U.S. at 427.[7]   Thus rather than
look to the fraud defense under Texas law, the court will examine
the totality of the circumstances in light of the six *O'Hare*
factors to determine if there is a genuine issue of material fact
concerning whether Griffith's waiver was made knowingly and
voluntarily.

_____

   [7]Although this court does not rely on legislative history in
deciding this issue, it notes that the legislative history can be
read consistently with the totality of the circumstances approach.
The report of the Senate Committee on Labor and Human Resources
explicitly expresses support for the Third Circuit's totality of
the circumstances approach in *Cirillo v. Arco Chemical Co.*, 862
F.2d 448 (3d Cir. 1988), and disfavors applying ordinary contract
principles, as the Eighth Circuit did in *Lancaster v. Buerkle Buick
Honda Co.*, 809 F.2d 539 (8th Cir. 1987).  S. Rep. No. 101-263, at
32 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 1509, 1537; *see also
Wastak*, 342 F.3d at 294 n.8.

   *Cirillo* set out seven non-exclusive factors that are relevant
in determining the totality of the circumstances:

> (1) the clarity and specificity of the release
> language; (2) the plaintiff's education and
> business experience; (3) the amount of time
> plaintiff had for deliberation about the
> release before signing it; (4) whether
> Plaintiff knew or should have known his rights
> upon execution of the release; (5) whether
> plaintiff was encouraged to seek, or in fact
> received benefit of counsel; (6) whether there
> was an opportunity for negotiation of the
> terms of the Agreement; and (7) whether the
> consideration given in exchange for the waiver
> and accepted by the employee exceeds the
> benefits to which the employee was already
> entitled by contract or law.

*Cirillo*, 862 F.2d at 451 (citing *Coventry v. U.S. Steel Corp.*, 856
F.2d 514, 523 (3d Cir. 1988)).

3

The summary judgment evidence would only permit a reasonable trier of fact to find, in light of the six *O'Hare* factors, that Griffith's waiver was knowing and voluntary. Griffith had possession of the written agreement for 15 calendar days——from February 2, 2004 to February 17, 2004——before signing it. The agreement clearly stated in bold print that the payments and benefits Griffith received were "in full settlement of any and all claims which [Griffith] [may] have or may have had as a result of [her] employment and/or termination of employment with the Company including but not limited to, any claims under . . . the Age Discrimination in Employment Act of 1967." D. App. 64 (emphasis omitted). Griffith consulted with counsel of her choice before signing the waiver. And Novation gave Griffith severance pay, assistance with COBRA premiums, and outplacement services in exchange for Griffith's waiver of her claims. The *O'Hare* factors demonstrate the absence of any genuine fact issue regarding the knowing and voluntary nature of the waiver.

E

1

The court will also analyze whether Novation made a material misrepresentation of fact to Griffith before she signed the waiver. Although this is not explicitly listed as one of the six *O'Hare* factors, the court concludes that it should consider this question

as part of the totality of circumstances regarding whether Griffith's decision to waive her ADEA claim was knowing and voluntary. *Cf. Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 451 (3d Cir. 1988) (stating that totality of circumstances factors are non-exclusive). In examining this issue, the court will not require Griffith to establish each element of a Texas fraud claim. *See O'Hare*, 898 F.2d at 1017 (rejecting application of Texas law to duress defense because "the policies embodied in the federal statute should not be frustrated by state law"); *but see Bennett*, 189 F.3d at 1229-30 (stating that court must consider totality of circumstances in analyzing ADEA waiver and then applying Colorado common law fraud elements to determine whether fraud defense is viable). Rather, the court will examine, as one of several factors in determining whether Griffith's claim was knowing and voluntary, whether there is a genuine fact issue that Novation made a misrepresentation of material fact.

2

Novation contends there was no misrepresentation because Griffith's position, Administrative Assistant II, was in fact eliminated and a new position, Legal Representative, was created. It urges that the new Legal Representative position is a paralegal position rather than administrative or secretarial, has stricter qualifications (i.e., Novation sought individuals with a college degree and prior experience as a paralegal), is classified in a

higher pay grade than the Administrative Assistant II position, and is exempt under the Fair Labor Standards Act (the Administrative Assistant II position is non-exempt).  Novation also maintains that the job duties are significantly different: the Administrative Assistant II position focuses on administrative, secretarial, and clerical work, whereas the Legal Representative position focuses on providing substantive legal support to the lawyers and clients and does not involve typing letters, answering telephones, preparing expense reports, or making copies.  Novation also contends that Griffith signed the release after she had already formed a belief that her job was being eliminated, thereby precluding any claim that she relied on the false statement when she signed the release.

Griffith maintains generally that she was replaced by both Metcalf and Hayslip, both of whom are younger than she.  Concerning Metcalf, Griffith avers that while she was on medical leave in December 2003 and January 2004, Metcalf attempted to perform her duties but was unable to do so, thereby generating a backlog; after Griffith's termination, Metcalf virtually ceased to work for the Finance Department and devoted most of her time to the Legal Department; Metcalf moved to a Legal Department cubicle; and Lewis' voice mail during her maternity leave stated that Metcalf was her assistant.  With regard to Hayslip, Griffith apparently contends that she perceived the new position of Legal Representative to be similar to her job, but that, at the time she signed the waiver,

she could not have known whether this position would be offered permanently because its posting had been withdrawn on February 24, 2004[8] and because Hayslip was not made permanent in the Legal Representative position until May 2004, well after Griffith signed the waiver.  Moreover, she argues that Hayslip took over her cubicle in the Legal Department, where he remained "until the filing of this lawsuit, whereupon [he] was moved to another office to attempt to establish that he had not assumed any of [Griffith's] duties." P. Br. 9.  And Griffith maintains that the duties of the new Legal Representative are substantially similar to the tasks she performed as an Administrative Assistant II.   In her response brief, Griffith includes a chart that compares her job duties with those of the Legal Representative, and she contends that this chart makes apparent the similarity of the duties.

3

    Novation has established the absence of a genuine fact issue concerning whether Griffith's position was eliminated.  First, it is evident from Griffith's own chart summarizing and comparing her job duties and those of the Legal Representative that she performed numerous purely administrative tasks that the Legal Representative

---

    [8]This contention appears to be based in part on the mistaken assertion that Griffith signed the waiver on February 27, 2004. *See* P. Br. 8 ("Griffith reviewed a job posting on February 4, 2004, for Legal Representative, which [Griffith] believed to be her job . . . before signing the release on February 27, 2004."). Griffith actually signed the waiver on February 17, 2004, seven days before the posting was withdrawn on February 24, 2004.

does not.  Griffith was responsible for "[u]pdat[ing] all templates for confidentiality agreements, supplier templates, forms and letters"; "[c]oordinat[ing] all travel; prepar[ing] expense reports, reconcil[ing] outside legal counsel invoices and department budget"; "perform[ing] special projects and miscellaneous job related duties"; and "assisting Donna with updating HPPI agreements and documents."  P. Br. 11-12.  The Legal Representative is responsible for none of these administrative duties.  Moreover, the Legal Representative regularly performs legal analysis, whereas Griffith did not.[9]  Hayslip reviews indemnity, warranty, and third-party beneficiary terms and conditions in proposed supplier contracts to ensure compliance with Novation's corporate guidelines and works to resolve any compliance issues, which may involve modifying the terms of the supplier contract.  And Hayslip has the authority to provide Legal Department approval for contractual documents that meet established compliance and legal parameters.  Griffith did none of this.  As she testified in her deposition, her responsibilities with respect to compliance issues were limited to determining whether the fee

_____

[9]This is also apparent from the chart in Griffith's response brief summarizing and comparing her duties with those of the Legal Representative.  According to the second task listed in the chart, both Griffith and the Legal Representative were responsible for "maintain[ing] Legal Department contracts," but the Legal Representative was also "responsible for *analysis* of contracts, contract amendments, and contract extensions."  P. Br. 11 (emphasis added).

set forth in the contract was greater or less than the three percent guideline.

Second, although Metcalf undertook many of Griffith's administrative duties, she also continued supporting the Finance Department, permitting an overall decrease in the number of administrative staff at Novation.  To show a misrepresentation of fact concerning the elimination of her position, Griffith would essentially need to demonstrate that the Finance Department's Administrative Assistant position was the one eliminated, that Griffith was terminated instead of Metcalf, and that Metcalf then replaced Griffith in the Legal Department.  But the summary judgment evidence demonstrates that this is not what happened, and a reasonable trier of fact could not find otherwise.  Although Metcalf began spending up to 75% of her time supporting the Legal Department, she continued supporting the Finance Department, her position continued to be accounted for in the Finance Department's budget, and she continued to report to Novation's Senior Finance Director.  The record only permits the reasonable finding that Metcalf took on many of Griffith's administrative duties, permitting the total number of administrative positions at Novation to be reduced by one.  Griffith has not sufficiently adduced evidence creating a genuine fact issue concerning Novation's alleged misrepresentation.

Thus even when the court considers as a factor in the totality

- 15 -

of circumstances whether Novation made a material misrepresentation of fact to Griffith, summary judgment is proper because there is no genuine issue of material fact that Novation made a material misrepresentation to Griffith——i.e., that her position was eliminated——that rendered her waiver unknowing or involuntary.[10]

### III

Novation also seeks summary judgment on Griffith's Title VII sex discrimination claim.  In her response brief, Griffith explicitly withdraws her sex discrimination claim.  *See id.* at 26. Accordingly, the court need not address this ground for Novation's motion.

### IV

Griffith also asserts in her complaint a misrepresentation claim.  Although Novation acknowledges the claim in its brief, *see* D. Br. 1, it does not move for summary judgment dismissing it. Because the court has concluded *supra* at § II(E)(3) that a reasonable trier of fact could not find that Novation made a material misrepresentation of fact concerning the elimination of Griffith's position, it follows inexorably that Griffith cannot recover on this claim.  But because in its motion Novation does not explicitly seek summary judgment as to this cause of action, it

---

[10]In its reply brief, Novation objects to certain evidence in Griffith's appendix.  Because the court has not relied on any of this evidence in deciding Novation's motion, it overrules the objection as moot.

would be error for the court to grant summary judgment dismissing it.  *See, e.g.*, *John Deere Co. v. Am. Nat'l Bank, Stafford*, 809 F.2d 1190, 1192 (5th Cir. 1987).   The court can, however, grant summary judgment *sua sponte*, provided it gives Griffith adequate notice.  *See, e.g.*, *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir. 1991) ("[D]istrict courts can definitely grant summary judgment *sua sponte*, upon proper notice to the adverse party.").

Accordingly, to prevent summary judgment on her misrepresentation claim, within 20 days after the date this memorandum opinion and order is filed, Griffith must file a response that demonstrates that her misrepresentation claim should not also be dismissed.   After considering her response,[11] the court will either dismiss the misrepresentation claim on the basis set forth in this memorandum opinion and order or invite Novation to file a response.

---

[11]If Griffith opts to abandon this claim as she did her Title VII claim, she may advise the court of this choice, in lieu of filing a memorandum.

- 17 -

*       *       *

Novation's summary judgment motion is granted as to her ADEA claim.  Griffith is given 20 days from the date this memorandum opinion and order is filed to file a response that demonstrates that her misrepresentation claim should not also be dismissed.

**SO ORDERED.**

May 18, 2006.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE